UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MABEN,

               Plaintiff                       Case No. 1:17-cv-11713
                                         District Judge Thomas L. Ludington
v.                                       Magistrate Judge Anthony P. Patti

CORIZON HEALTH, INC.,
BADAWI ABDELLATIF,
HILDA MBIDZO, and
RAUL TUMADA,

               Defendants.

_____/

**REPORT AND RECOMMENDATION TO DENY WITHOUT PREJUDICE PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE ACTION (DE 21) and GRANT DEFENDANTS CORIZON HEALTH, INC., ABDELLATIF, AND MBIDZO'S MOTION TO DISMISS (DE 28)**

**I.    RECOMMENDATION**:  The Court should grant Defendants Corizon Health, Inc., Abdellatif, and Mbidzo's motion to dismiss.  If the Court agrees with this recommendation, then it should also deny without prejudice Plaintiff's emergency motion for injunctive action, as the only remaining Defendant would be Tumada, who has yet to appear.

**II.    REPORT**

    **A.    Background**

Plaintiff is currently incarcerated at the Michigan Department of Corrections (MDOC) Thumb Correctional Facility (TCF), where he is serving a sentence

imposed in state court on September 16, 2013.  *See* Case No. 13002103-FH-L (St. Clair County); www.michigan.gov/corrections, "Offender Search."  On May 25, 2017, while incarcerated at TCF, Plaintiff filed the instant lawsuit *in pro per* based on Defendants' alleged treatment, or lack thereof, of a plantar wart while Plaintiff was incarcerated at various MDOC facilities.  Defendants are:  (1) Corizon Health, Inc.; (2) Raul Tumada, P.A., of Macomb Correctional Facility (MRF); (3) Hilda Mbidzo, N.P., of Central Michigan Correctional Facility (STF); and (4) Dr. Badawi Abdellatif of TCF.  Plaintiff's causes of action are based on 42 U.S.C. § 1983 and Eighth Amendment deliberate indifference to a serious medical need, as well as medical malpractice / negligence in contravention of Mich. Comp. Laws § 600.5838.  (*See* DE 1 at 4-12.)

Defendants Corizon Health, Abdellatif and Mbidzo have appeared.  (DE 11, 12, 16, 23, 24, 26.)  Defendant Tumada has yet to appear.  (DE 32; *see also* DE 9 at 5.)[1]

## B.    Pending Matters

Judge Ludington has referred this case to me for pretrial matters.  (DE 8.) Currently pending before the Court are three matters:

---

[1] The waiver sent to Tumada at MRF was returned unexecuted, on the basis that he is not an MDOC employee, but it provided the contact information for Corizon Health.  The Court is following up with the USMS regarding the status of service upon Tumada in care of Corizon Health.

2

**(1)**   Plaintiff's July 24, 2017 emergency motion for injunctive action, regarding which Defendants Corizon Health, Inc., Abdellatif, and Mbidzo have filed a response (DEs 21, 27);

**(2)**   Defendants Corizon Health, Inc., Abdellatif, and Mbidzo's August 12, 2017 motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), regarding which response (albeit seemingly untimely) and reply have been filed (DEs 28, 29, 40, 41); and,

**(3)**   Plaintiff's September 5, 2017 motion for partial summary judgment / disposition on medical malpractice and negligence claims, regarding which a response and timely reply have been filed (DEs 34, 36, 44, 45).

This report concerns the two earlier-filed motions.

### C.   Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

## D.   Discussion

### 1.   Plaintiff's allegations against these Defendants

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

According to Plaintiff, his plantar wart was diagnosed and treated prior to his incarceration.  He received various forms of treatment upon his arrival at the Charles Egeler Reception and Guidance Center (RGC) and during his incarceration at Chippewa Correctional Facility (URF).  (DE 1 ¶¶ 1-4.)

Plaintiff was transferred to MRF in April of 2014.  Upon arrival, he was examined by Defendant Tumada, who stated he would cancel Plaintiff's hypothyroidism medication, after which Plaintiff sought treatment for his plantar wart.  (DE 1 ¶ 5.)  Plaintiff kited health care on June 6, 2014 seeking salicylic acid pads, a soak basin, and perhaps medical shoes.  He was called to Health Care on June 10, 2014, at which time the nurse told him shoes would likely help, but "they would not be provided (per policy of Defendant Corizon)."  On June 16, 2014, Plaintiff saw Defendant Abdellatif and explained the consequences of his wart; however, Abdellatif was allegedly deliberately indifferent to Plaintiff's serious medical need and "refused all treatment."  (DE 1 ¶ 6-8, DE 1 at 104-105.)  Plaintiff completed another kite on June 24, 2014, complaining of worsening foot pain, "trouble walking with a normal gait[,]" and "extreme knee and hip pain."  His appointment scheduled for June 27, 2014 was cancelled.  (DE 1 ¶¶ 9-10, DE 1 at 106-107.)  He saw a nurse on July 3, 2014, who gave Plaintiff moleskin and a soak basin.  When the nurse summoned Defendant Tumada, he "again looked at Plaintiff[']s foot and refused all treatment."  (DE 1 ¶ 11, DE 1 at 108.)

Plaintiff was transferred to STF in July of 2014.  (DE 1 ¶ 12.)  On May 19, 2015, he kited medical regarding foot pain.  (DE 1 ¶ 14, DE 1 at 77.)  He saw Nurse Thrush on May 29, 2015.  (DE 1 ¶ 15.)  On June 8, 2015, Plaintiff saw Defendant Mbidzo, who treated the wart; however, when Plaintiff sought a specialist referral, Defendant Mbidzo informed him "it was Corizon[']s policy to den[y] outside care[.]"  However, she also said she would call Plaintiff back to health care in a couple of weeks.  (DE 1 ¶ 16, DE 1 at 75-76.)  In July 2015, Plaintiff kited health care and was twice seen by Defendant Mbidzo, who "pared back" his plantar wart; however, she "would not put in a request for specialist care."  (DE 1 ¶ 18-20, DE 1 at 63-66.)  Plaintiff saw Mbidzo on September 14, 2015.  She wanted to take pictures of Plaintiff's feet.  Plaintiff sought referral to a podiatrist.  He "was told that shoes would be requested . . . [,]" but it was Defendant Corizon's "policy to deny that request . . . ."  Plaintiff's feet were photographed four days later on September 18, 2015.  (DE 1 ¶¶ 23-24, DE 1 at 15 ¶ 5, DE 1 at 20-21, 73, 100.)

At some point, it seems by January 2017 (*see* DE 1 at 47, 80), Plaintiff was transferred to TCF.  An x-ray performed on or around that time showed "mild a[r]thritic changes within the right hip joint . . . ."  (DE 1 ¶ 33, DE 1 at 50-51, 56.)  On March 2, 2017, Plaintiff kited health care "Corizon," asking for "help and treatment for a <u>painful</u> plantar wart on the bottom of his right foot[,]" and he saw

Nurse McLellan on March 7, 2017 at TCF.  Plaintiff requested to see Physician's

Assistant Coutier, instead of Dr. Abdellatif.  (DE 1 ¶ 35, DE 1 at 61, 81) (emphasis

in original).

As of April 2, 2017, Plaintiff had yet to see a health care provider for his

"painful[] serious medical condition[,]" in contravention of MDOC PD 03.04.100 ¶

PP.  (DE 1 ¶ 35.)  Plaintiff saw Abdellatif on April 3, 2017, who told Plaintiff to

"'shave' the plantar wart himself."  According to Plaintiff, Abdellatif "refused any

and all treatment."  (DE 1 ¶ 36.)

> ### 2. Defendant Corizon Health, Abdellatif and Mbidzo's motion to dismiss
>
> #### a. Claims against Abdellatif and Mbidzo

As Plaintiff puts it, it has been "three years with an almost completely

untreated [p]lantar [w]art."  (DE 1 ¶ 25.)  Defendants argue that Plaintiff has failed

to state an Eighth Amendment claim of deliberate indifference, because he has not

identified a serious medical need or a denial of medical care.  (DE 28 at 20-27.)

The Court applies a two-prong test with objective and subjective

components to assess claims of deliberate indifference to serious medical needs of

prisoners.  *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d

811 (1994).  First, the plaintiff must show that the deprivation alleged is

"objectively, 'sufficiently serious.' "  *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 298,

111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).  Second, the plaintiff must show that the

prison official committing the act did so with a "'sufficiently culpable state of

mind.'"  *Id.*  (citing *Wilson,* 501 U.S. at 302–03).  The United States Court of

Appeals for the Sixth Circuit applies the test as follows:

> First, we determine whether the plaintiff had a sufficiently serious
> medical need under the objective prong. A medical need is
> sufficiently serious if it has been diagnosed by a physician that has
> mandated treatment or it is so obvious that even a lay person would
> easily recognize the need for medical treatment. Second, we
> determine whether the defendant had a sufficiently culpable state of
> mind in denying medical care under the subjective prong.

*Burgess,* 735 F.3d at 476 (internal citations and quotations omitted).

### i.      Objective component

Defendants argue that "[p]lantar warts are not a serious medical need[.]"

(DE 28 at 23-25; *see also* DE 41 at 2.)  There is authority to this effect.  *See*, *e.g.*,

*Wagle v. Skutt*, No. 10-CV-10506, 2011 WL 6004344, at *5 (E.D. Mich. Nov. 7,

2011) (report and recommendation of Majzoub, M.J., adopted by Edmunds, J.)

("The evidence in this case demonstrates that the condition of Plaintiff's feet,

whether from a corn and callus or from ill-fitting shoes, does not present a

sufficiently serious medical need for purposes of his Eighth Amendment claim.

Consequently, Plaintiff cannot satisfy the objective component of his Eighth

Amendment claim relating to the corn and shoe accommodation."); *Whitfield v.*

*O'Connell*, No. 09 CIV. 1925 (WHP), 2010 WL 1010060, at *8 (S.D.N.Y. Mar.

18, 2010), *aff'd,* 402 F. App'x 563 (2d Cir. 2010) ("Warts do not constitute a serious medical need under the Eighth Amendment.").

However, taking the allegations in Plaintiff's complaint as true, as required on a motion to dismiss, I note Plaintiff's myriad representations that the wart caused pain that made him "unable to walk with a normal gait[,]" or that resulted in an "uneven" or "compensatory" gait, which further caused knee and hip pain. (DE 1 ¶¶ 8, 25, 33; *see also* DE 1 ¶¶ 9, 13, 19.)  In fact, within his response regarding the "objective component" of an Eighth Amendment deliberate indifference claim, Plaintiff pleads that "this pain is why [he] has walked irregular[ly] for the past several years and caused the PERMAN[E]NT ARTHRITIS in his right knee and hip."  (DE 1 ¶ 34; *see also* DE 40 at 5) (emphasis in original).  As at least one Court has stated:

> Although the court acknowledges that plaintiff's plantar warts cause him some pain, they do not constitute a serious medical need. Plaintiff's condition will not result in significant injury. Plaintiff does not claim that his condition significantly alters his daily activities. Plaintiff is able to ambulate without aid and without a limp . . . . Plaintiff continues to play basketball at least three times a week. It also does not appear that the delay in plaintiff's treatment resulted in further significant injury. Therefore, plaintiff's foot problems are not a serious medical need.

*Page v. Scott*, No. 3:07CV00287BESVPC, 2009 WL 604922, at *6 (D. Nev. Feb. 17, 2009).  The same cannot be said of Plaintiff's claims here.  Thus, for the sake

of argument, this report assumes that the alleged results of Defendants' treatment

of Plaintiff's plantar wart constitute a serious medical need.

### ii.   Subjective component

To succeed on the subjective prong, a plaintiff must show "more than mere

negligence, but something less than specific intent to harm or knowledge that harm

will result...." *Burgess*, 735 F.3d at 476 (citing *Farmer*, 511 U.S. at 835).

Specifically, the conduct must "demonstrate deliberateness tantamount to an intent

to punish." *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988).

However, "a prisoner is not required to show that he [or she] was literally ignored

by the staff to prove an Eighth Amendment violation, only that his [or her] serious

medical needs were consciously disregarded." *Rouster v. Cnty. of* Saginaw, 749

F.3d 437, 448 (6th Cir.2014).  Put another way,

> [a] government doctor has a duty to do more than simply provide
> some treatment to a prisoner who has serious medical needs; instead,
> the doctor must provide medical treatment to the patient without
> consciously exposing the patient to an excessive risk of serious harm.

*LeMarbe v. Wisneski,* 266 F.3d 429, 439 (6th Cir.2001).

Plaintiff alleges that Abdellatif "showed deliberate indifference to

Plaintiff[']s serious medical need and refused all treatment."  (DE 1 ¶ 8; *see also*

DE 1 ¶ 36.)  Plaintiff makes a similar allegation as to "Defendants."  (DE 1 ¶¶ 25,

30, 33, 34, 37.)  In addition, Plaintiff alleges that Defendants "knowingly

disregarded" his serious medical need and that they "knowingly continued to deny Plaintiff treatment."  (DE 1 ¶¶ 30, 34.)

To be sure, Plaintiff responds that Defendants were made aware of his serious medical need through several health care kites, such as the one he sent on July 23, 2015 as to which he claims he did not receive a response.  (DE 40 at 9, DE 1 ¶ 19, DE 1 at 15 ¶ 3.)  In fact, the July 27, 2015 response to this kite is attached as an exhibit to his complaint.  (DE 1 at 64.)  More to the point, as Defendants correctly argue, Plaintiff "has failed to show that Defendants recklessly disregard[ed] his serious medical needs[.]"  (DE 28 at 25-27; *see also* DE 41 at 2.)

First, Plaintiff's claims against <u>Defendant Mbidzo</u> of STF involve visits in June, July, and September 2015, during which she "pared back the Wart," "provided antibiotic cream," told him "she would call [him] back to work on the wart further in a couple of weeks[,]" and/or admitted Plaintiff's feet were "in such 'bad condition' that she wanted to take pictures."  (DE 1 ¶¶ 16, 18, 20, 23; DE 1 at 15 ¶ 5.)  True, Plaintiff alleges that:  **(a)** during one visit Mbidzo stated, "Plaintiff would have to [pare] on his own in the future[,]" which cannot be done by a state prisoner, and **(b)** during another visit Mbidzo stated that "she would not put in a request for specialist care."  (DE 1 ¶¶ 18, 20; DE 1 at 16 ¶ 13.)  Yet, Plaintiff also alleges that Mbidzo informed him during an earlier visit that he "would 'not' be seeing a specialist at any time as it was Corizon[']s policy to [deny] outside

11

care[.]" (DE 1 ¶ 16.)  Thus, Plaintiff's own complaint seems to acknowledge that the decision to refer Plaintiff to a specialist did not remain with Defendant Mbidzo. Moreover, Plaintiff's response that Mbidzo "refused all further treatment and refused a [referral] to a specialist or a proper diagnos[i]s[,]" (DE 40 at 9), does not undo his allegations about the care she *did* provide.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  While Plaintiff claims that she provided "no treatment or care" and "failed to act" even though the severity of his condition convinced her to order photos (DE 40 at 12), "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998)).  Indeed, it appears those photos were taken.  (DE 1 at 21.)

Second, Plaintiff's claims against <u>Defendant Abdellatif</u> – initially of MRF and later of TCF - result in a similar conclusion.  Plaintiff alleges that a visit with Dr. Abdellatif on June 16, 2014 concluded with a refusal of "all treatment."  (DE 1 ¶ 8, DE 1 at 104-105.)  Plaintiff also alleges that, on April 3, 2017, "over a month after putting in a health care kite[,]" Dr. Abdellatif told Plaintiff "to 'shave' the

12

plantar wart himself[,]" which Plaintiff claims "is not a procedure a state prisoner is capable of performing himself."  Here, too, Plaintiff alleges that Defendant Abdellatif "refused any and all treatment."  (DE 1 ¶ 36.)

In defense of this cause of action, Plaintiff responds that Abdellatif was deliberately indifferent to Plaintiff's serious medical needs, because he knew that "a state prisoner has no access to any bladed instrument," and Plaintiff apparently likens Abdellatif's "glance" at Plaintiff's foot to a case in which "the medical attention rendered may be so woefully inadequate as to amount to no treatment at all."  *Westlake*, 537 F.2d at 860 n.5.  Relatedly, Plaintiff responds that there is "no substantive disagreement with the treatment provided" where Dr. Abdellatif provided "no treatment."  (*See* DE 40 at 10-11.)  However, as noted above, Plaintiff alleges that he saw Dr. Abdellatif on at least two occasions – June 16, 2014 at MRF and April 3, 2017, presumably at TCF.  Moreover, the Court observes that, on an attachment to the complaint, Plaintiff wrote of the earlier visit that Abdellatif "refused to treat me at all!  I begged him to use a scalp[el] & par[e] it back."  (DE 1 at 105.)  Thus, Plaintiff's allegations against Defendant Abdellatif, informed by notes attached to his complaint, "dispute" the "adequacy of the treatment[.]"  *Westlake*, 537 F.2d at 860 n.5.

Third, to the extent Plaintiff claims that <u>either Defendant Mbidzo or Defendant Abdellatif</u> was deliberately indifferent to a serious medical need by

failing to provide medical shoes (DE 1 ¶¶ 6, 7, 23; *see also* DE 1 ¶ 26, DE 1 at 45),

Plaintiff's complaint tells a different story.  Specifically, the October 29, 2015 Step

II grievance response, which is attached to Plaintiff's complaint, explains that:

> . . . the Assistant Chief Medical Officer's (ACMO) recent deferral of a
> request for medically issued tennis shoes contained the
> recommendation that the Quartermaster re-fit grievant for properly
> sized shoes.  The ACMO also noted that grievant may require wide
> toe box (WTB) modified oxfords.  As it is unclear to this respondent if
> the latter recommendations were discussed with the grievant, STF
> Health Care has been instructed to schedule grievant with nursing for
> that purpose.

(DE 1 at 30.)  In addition, the October 2015 kite response noted, "[a]s per your

visit on [October 16, 2015], the request for medically provided shoes was deferred

. . .[ .]"  (DE 1 at 101.)  Thus, as Defendants point out, "the decision not to provide

Plaintiff with special shoes was the ACMO's, and not the Defendants'."  (DE 28 at

26.)[3]

Finally, to the extent Plaintiff contends that the subjective test is met by the

treatment he received while incarcerated at URF, as compared with the treatment

he received from Abdellatif and Mbidzo at MRF, STF and TCF (*see* DE 1 at 4 ¶ 3,

DE 1 at 16 ¶ 13, DE 40 at 6 ¶ 2), "a difference of opinion does not establish

---

[3] ACMOs are members of the MDOC's Medical Services Advisory Committee,
which is "responsible for recommending improvements to the delivery of health
care services, developing criteria for care to be provided to prisoners with chronic
illness, approving medications to be added to the BHCS uniform formulary, and
other responsibilities as identified by the BHCS Administrator."  MDOC PD
03.04.100 ("Health Services"), effective Feb. 1, 2015, ¶ O.

deliberate indifference to serious medical needs[.]"  *Lerma v. Bell*, 2 F. App'x 782,

784 (9th Cir. 2001); *see also Cox v. Dupnik*, 14 F. App'x 911, 912 (9th Cir. 2001).

### b.    Claims against Corizon Health

In the caption of his complaint, Plaintiff explains he is suing Defendant

Corizon Health Care in its "supervisor[y] as well as personal capacity[.]"  (DE 1 at

1.)  Defendants argue that Plaintiff has failed to state a claim against Corizon.  (DE

28 at 28-31; *see also* DE 41 at 2-3.)

Plaintiff's claims against Defendant Corizon should be dismissed.  First,

liability under 42 U.S.C. § 1983 "must be based on more than respondeat superior,

or the right to control employees."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999).  "[A] failure of a supervisory official to supervise, control, or train the

offending individual officers is not actionable absent a showing that the official

either encouraged the specific incident of misconduct or in some other way directly

participated in it."  *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

"At a minimum a plaintiff must show that the official at least implicitly authorized,

approved, or knowingly acquiesced in the unconstitutional conduct of the

offending officers."  *Hays*, 668 F.2d at 874.

That Plaintiff's claim against Corizon Health is based on supervisory

liability is an interpretation buttressed by his "unsigned" notice of intent attached

to his complaint, wherein Plaintiff writes, "Defendant Corizon was responsible for

the supervision and actions of all Defendant's at all times relevant to the instant

suit." (DE 1 at 37 ¶ 24.) Moreover, in response to the instant motion, Plaintiff

specifically takes issue with Corizon's training of Mbidzo, claiming that Defendant

Corizon "indifferently stood by and facil[i]tated this Constitutional violation[.]"

(DE 40 at 12.)

However, "a plaintiff seeking to impose liability on a municipality under §

1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's

injury." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403

(1997). The municipal liability concept applies to a private corporation, such as

Corizon. As this Court has explained:

> This rule of municipal liability applies equally to private corporations,
> like Corizon, that are performing services as an agent of the State and
> are therefore deemed to be state actors for purposes of § 1983. *See
> Street v. Corr. Corp. of Am.,* 102 F.3d 810, 817–18 (6th Cir.1996).
> Therefore, for [Plaintiff] to state a § 1983 *"Monell"* claim against
> Corizon, he must identify a *specific* policy of Corizon's that "directly
> caused [him to suffer] a deprivation of federal rights." *Brown,* 520
> U.S. at 415. To do so, [Plaintiff] must demonstrate one of the
> following: (1) the existence of an illegal official policy or legislative
> enactment; (2) that an official with final decision making authority
> ratified illegal actions; (3) the existence of a policy of inadequate
> training or supervision; or (4) the existence of a custom of tolerance or
> acquiescence of federal rights violations. *See Burgess v. Fischer,* 735
> F.3d 462, 478 (6th Cir.2013).

*Hodges v. Corizon*, No. 14-11837, 2015 WL 1511153, at *4 (E.D. Mich. Mar. 30,

2015) (O'Meara, J., adopting report and recommendation of Grand, M.J.)

(emphasis added). Plaintiff's allegation that Corizon "has failed to properly train

and[/]or supervise [its] 'health care providers'[,]" (DE 1 at 11 ¶ 35), does not satisfy the required demonstrations.  To the extent Plaintiff's October 12, 2017 response elaborates upon his claim against Defendant Corizon (*see* DE 40 at 12-14), it does not change the fact that Plaintiff's May 25, 2017 pleading is inadequate and that it does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

Second, Plaintiff's allegations that Defendant Corizon had policies to deny shoes and outside care should meet a similar fate.  (DE 1 ¶¶ 7, 16, 23; *see also* DE 1 at 16 ¶ 8.)  I note that the unexecuted "notice of intent" attached to his complaint claims that, "[o]n repeated occasions care was denied completely, the defendants stating it was the policy of Defendant Corizon who instructed them to deny care." (DE 1 at 38 ¶ C.)  Also, Plaintiff contends he "does not disagree with the treatment provided . . . [;]" rather, he contends that Defendants "intentionally and entirely with[held] any and all treatment for his severe pain or horribly infected feet[,]" for which he relies upon *Matje v. Zetos*, No. 13-14791, 2015 WL 1510554, at *2 (E.D. Mich. Mar. 25, 2015), *appeal dismissed* (Sept. 3, 2015) ("Plaintiff's claim that Defendants are knowingly and intentionally failing to provide *any* treatment whatsoever for his severe pain is sufficient to state a viable Eighth Amendment claim.").  (DE 40 at 14.)

However, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). *See also Thomas v. City of Chattanooga*, 398 F.3d 426, 432-433 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) and *Bryan*, 520 U.S. at 410). While the Court acknowledges that Plaintiff has identified *the subject matter* – shoes and outside care – of these alleged policies, his allegations are *not otherwise specific*. *Hodges*, 2015 WL 1511153, at *4 (a *Monell* claim requires identification of a specific policy). Moreover, Plaintiff has not alleged a "pattern of similar constitutional violations . . . [.]" *Connick*, 563 U.S. at 62. *See also Thomas*, 398 F.3d at 434 (noting that "appellants have failed to show several separate instances of the alleged rights violation[,]" when affirming grant of summary judgment in defendant city's favor).[4] *Cariega v. City*

---

[4] As it turns out, the MDOC Policy Directive governing health services contains a provision about "specialty service appointments," as well as several provisions governing "outside health services at prisoner's expense[,]" including the provision that "prisoners may be allowed to receive health services by an outside QHP with prior approval of the Warden after consultation with the appropriate ACMO." MDOC PD 03.04.100 ¶¶ GG(1), HH-MM. Thus, while Plaintiff responds that Defendant Corizon Health "fail[ed] to refer [him] to a podiatrist or specialist . . . [,]" (DE 40 at 13), it may not have been Defendant Corizon Health's choice to do so. The same would be true of Nurse Oaks's July 2015 assertion: "As a reminder, if you feel that you need outside Medical Treatment/Evaluation and it is not

*of Reno*, No. 316CV00562MMDWGC, 2017 WL 1900980, at *3 (D. Nev. May 8, 2017) ("The FAC's mere legal conclusion that there is a 'pattern or practice' without pointing to specific decisions of the City of Reno's lawmakers, specific acts of the City's policymaking officials, or factual examples of practices so persistent as to have the force of law, is insufficient under the pleading standards of *Iqbal/Twombly* to withstand a motion to dismiss under Rule 12(b)(6).").

### c.      State law medical malpractice claims

It is clear that Plaintiff is attempting to bring state law medical malpractice claims against Defendants.  He makes several references to the "standard of care." (DE 1 ¶¶ 6, 20, 21, 29, 37; *see also* DE 1 at 35-39.)  In addition, he cites Mich. Comp. Laws §§ 600.2912 and 600.5838, uses the term "medical malpractice" and attaches an unsigned "Notice of Intent to File Claim under MCL 2912b" and a photocopy of the Michigan statute by which such notice is required.  (DE 1 at 1, 14, 40-41; DE 1 at 9 ¶¶ 31-32; DE 1 at 15 ¶ 6; DE 1 at 35-41.)  *See* Mich. Comp.

---

recommended by our Providers you may explore O.P. 04.06.135 Prisoner Requesting Outside Health Services at Own Expense."  (DE 40 at 13, DE 1 at 64.)

This same policy directive indicates that a decision about "specialized shoes" is the subject of a Medical Services Advisory Committee guideline.  *See id.* at ¶¶ ZZ, EEE; *Dulak v. Corizon Inc.*, No. 14-10193, 2015 WL 10382577, at *2 (E.D. Mich. Oct. 26, 2015), *report and recommendation adopted*, No. 14-10193, 2016 WL 795865 (E.D. Mich. Feb. 29, 2016) (describing MDOC Bureau of Health Care Services Shoe Guidelines).  Thus, it seems unlikely, as Plaintiff responds, that Defendant Corizon denied Defendant Mbidzo's written request for "soft well[-]fitting shoes."  (DE 40 at 12.)  Instead, it appears the request was deferred by the ACMO in or about October 2015.  (DE 1 at 30, 101.)

Laws §§ 600.2912b.  Also, he uses the word "negligence" and "negligent."  (DE 1 at 1, 18, DE 1 ¶¶ 33, 35.)

Defendants argue that Plaintiff "has not met the statutory requirements for bringing a medical malpractice claim under Michigan law[,]" namely, compliance with the notice of intent to sue and Affidavit of Merit requirements of Mich. Comp. Laws §§ 600.2912b, 600.2912d.  (DE 28 at 18-20.)  Plaintiff responds to this argument, at least in part, by contending that the lack of an affidavit of merit is "temporary."  (DE 40 at 14.)

Nonetheless, if the Court agrees with the foregoing recommendation that Plaintiff's allegations against Defendants Corizon Health, Abdellatif, and Mbidzo fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need upon which relief may be granted, then the Court should decline to exercise supplemental jurisdiction as to Plaintiff's state law medical malpractice claims against these defendants and leave Plaintiff to whatever state court remedies may be available to him.  28 U.S.C. § 1367.

## E.    Conclusion

In his response, Plaintiff contends that "it would result in a reversible on remand abuse of discretion to dismiss plaintiff[']s complaint prior to discovery." (DE 40 at 4.)  However, the instant motion to dismiss asserts that Plaintiff has failed "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P.

12(b)(6).  Such motions are appropriately decided on the face of the complaint, *i.e.*, without engaging in discovery.  *See Mitchell v. McNeil,* 487 F.3d 374, 379 (6th Cir. 2007) ("Because the district court correctly concluded that plaintiffs' allegations failed to state a claim as a matter of law, it follows that the district court did not err in granting defendants' Rule 12(b)(6) motion before permitting discovery by plaintiffs."); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 644 (6th Cir. 2005) ("it was not unreasonable for the district court to conclude that the case could be disposed of on the face of the complaint and that discovery would not affect the outcome.").

In sum, for the reasons stated above, Defendants Corizon Health, Abedellatif, and Mbidzo's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be **GRANTED**.  If the Court agrees with this recommendation, then the only remaining Defendant will be Tumada, who has yet to appear.  As such, the Court should deny without prejudice Plaintiff's emergency motion for injunctive action.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 18, 2017      s/Anthony P. Patti
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 18, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti